1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11  JERRY PODESTA,                     )   NO. CV 04-2914-MAN
                                       )
12                  Plaintiff,         )
           v.                          )   MEMORANDUM OPINION AND ORDER
13                                     )
                                       )
14  JO ANNE B. BARNHART,               )
    Commissioner of the                )
15  Social Security Administration,    )
                                       )
16                  Defendant.         )
    _____)
17

18        Plaintiff filed a Complaint on April 27, 2004, seeking review of

19  the denial by Defendant Social Security Commissioner ("Commissioner") of

20  Plaintiff's claim for disability insurance benefits ("DIB").  42 U.S.C.

21  §405(g).  On June 10, 2004, the parties filed a "Consent to Proceed

22  Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636.

23  The parties filed a Joint Stipulation on January 3, 2005, in which:

24  Plaintiff seeks an order reversing the Commissioner's decision and

25  remanding for the payment of benefits or, alternatively, remanding the

26  case to the Commissioner for a new hearing; and Defendant requests that

27  the Commissioner's decision be affirmed.   The Court has taken the

28  parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on July 13, 1994. (Administrative Record ("A.R.") 75-78.) Plaintiff claims to have been disabled since March 3, 1994, due to coronary artery disease and degenerative changes of the knees and hands. (A.R. 75, 404.) Plaintiff has past relevant work experience as an inspector and manager in the telecommunications industry. (A.R. 404.) The period of disability at issue in this case is from March 3, 1994, through December 6, 1997, the date on which Plaintiff became entitled to retirement benefits. (Joint Stip. at 4.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On May 10, 1995, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge Gary D. Admire. (A.R. 31-74.) In a June 14, 1996 written decision, the Administrative Law Judge denied Plaintiff's request for benefits; the Appeals Council subsequently affirmed the denial of benefits. (A.R. 21-25, 333-34.)

Plaintiff sought review of that decision in this Court. On December 31, 1998, the parties stipulated to remand the case for further administrative proceedings, which the parties described as follows:

> Such proceedings are to include, but are not limited to, the Administrative Law Judge's updating the record through the period at issue, including attempting to obtain more readable copies of Dr. Stellar's treatment notes; requesting

2

clarification of Dr. Stellar's opinion; further considering the evidence of record and further evaluating the opinion evidence of record; further considering subjective complaints and the claimant's Residual Functional Capacity; further comparing the Residual Functional Capacity to the demands of Past Relevant Work; and, if warranted, obtaining Vocational Expert Evidence.

(A.R. 335-36.)

After Plaintiff's claim was remanded, Administrative Law Judge London Steverson (the "ALJ") held a supplemental hearing regarding Plaintiff's claim on June 1, 1999.  (A.R. 259-311.)  The ALJ denied benefits in a September 17, 1999 opinion, which the Appeals Council subsequently affirmed.  (A.R. 248-54.)[1]  Plaintiff again sought review of that decision in this Court.  The Court again remanded this matter to the Commissioner, pursuant to its April 19, 2001 Memorandum Opinion and Order (the "2001 Order").  (A.R. 413-24.)

On remand, Plaintiff advised that he did not wish to appear at a further hearing, although his attorney would be present, and requested an "on the record" decision.  As a result, no further hearing was conducted.  (A.R. 393, 432.)  In a January 15, 2003 written decision, the ALJ denied benefits, and the Appeals Council affirmed that denial of benefits.  (A.R. 392-98, 381-83.)

---

[1]    The Appeals Council's denial of this decision is not contained in the record.

3

**SUMMARY OF ADMINISTRATIVE DECISION**

In his January 15, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue, and met the disability insured status requirements from March 3, 1994, through September 30, 1997. (A.R. 397.) He found that Plaintiff has "severe" impairments, consisting of coronary artery disease and degenerative changes of the knees and hands, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity:

> [Plaintiff's] capacity to perform work-related activities is only limited by an inability to lift more than twenty pounds occasionally and ten pounds frequently, engage in more than occasional climbing, bending, stooping, and crawling activity, travel in a car for more than fifty miles per day, and write for more than fifteen minutes at a time (20 C.F.R. 404.1545).

(A.R. 397-98.) In so finding, the ALJ rejected Plaintiff's allegations of greater limitations as not credible. (A.R. 397.) Based on the testimony of the vocational expert, the ALJ found that Plaintiff's past relevant work as an inspector and manager does not require him to perform activities inconsistent with his limitations. (A.R. 398.) Thus, the ALJ concluded that Plaintiff was not disabled at any time during the period at issue. (*Id.*)

4

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

5

**DISCUSSION**

Plaintiff alleges one disputed issue, *i.e.*, whether the ALJ properly considered the opinions of Dr. William Stellar, Plaintiff's treating physician.  (Joint Stip. at 4.)

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight.  *See* Social Security Ruling 96-2p; *see also* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (opinions of treating physicians are entitled to great deference).  When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

In a December 8, 1994 letter, Dr. Stellar reported that Plaintiff continued to experience significant cardiac symptoms after surgery, and opined that Plaintiff was "completely and totally disabled and unable to continue at his current occupation." (A.R. 179.)  In an April 22, 1996 report, Dr. Stellar found that Plaintiff could not:  sit or stand for more than one hour at a time; walk, bend, or stoop for more than one-half hour at a time; lift more than 20 pounds occasionally; and use his

hands for repetitive actions such as pushing and pulling arm controls. (A.R. 228-29.) In addition, despite the fact that he found that Plaintiff's prognosis was "good," Dr. Stellar indicated that Plaintiff could not return to his former work. (A.R. 228, 230.)

In the 2001 Order, the Court noted that Dr. Stellar's notes were found to be unreadable by Dr. Thomas Beardmore, the medical expert who testified at the May 10, 1996 hearing, as well as the Court. (A.R. 418-20.) The Court further noted that the ALJ only had requested additional records from Dr. Stellar on or after April 26, 1996. (A.R. 423.) The Court directed the ALJ to develop the record on remand, stating that the ALJ "had the affirmative duty to attempt to obtain more legible copies of Dr. Stellar's records, including records dated prior to April 26, 1996." (A.R. 423.)

On remand, the ALJ again rejected Dr. Stellar's opinions, stating:

Pursuant to the remand order, the Administrative Law Judge, at A.R. 342, did request evidence through Disability Determination Services on April 6, 1999 for all medical evidence from Dr. William Stellar pertaining to the period April 26, 1996 to the present. At A.R. 341, the Administrative Law Judge also issued a Notice to Produce Evidence to the claimant with a copy sent to the claimant's attorney of record, Lawrence Rohlfing, with instructions that parties and their representatives identify, obtain and submit all relevant evidence, which implicitly includes all evidence from Dr. Stellar dating prior to April 26, 1996. Moreover,

the Administrative Law Judge notes that the record already
contains pre-April 26, 1996 treatment records from Dr. Stellar
at A.R. 176-215, 227-243.   There is no evidence which
indicates that there are additional outstanding records from
Dr. Stellar dated prior to April 1996 which are not currently
in the record. [Plaintiff] and his attorney make no such
allegations.  There is also no allegation from [Plaintiff] and
his attorney regarding the illegibility of Dr. Stellar's
treatment notes (see Exhibits 23, 35).

.    .    .    .

[The] Administrative Law Judge finds that "crucial portions"
of Dr. Stellar's assessment were completed and legible.  The
Administrative Law Judge finds that Dr. Stellar's April 1996
functional assessment as well as a December 8, 1994 disability
opinion at A.R. 179 were properly considered and rejected
within the prior hearing decisions.  Dr. Stellar's opinions
clearly fail to detail specific laboratory and clinical
findings which support each of his functional restrictions and
his opinion of disability.   Without such findings, his
opinions are not persuasive and are conclusory.

As stated at 20 CFR 404.1527, a medical opinion's
supportability and consistency with the record are two
important factors, in addition to others, which are used to
weigh medical source opinion.  In this case, Dr. Stellar fails
to present relevant evidence, particularly detailed medical

signs and laboratory findings, to support his functional assessments. Additionally, as stated within the 1999 Administrative Law Judge decision, Dr. Stellar's opinions are inconsistent with his own statements and the record as a whole. As noted within the prior decision, treatment records from Dr. Stellar fail to corroborate his limitations. Rather, May 1995 and August 1996 visit notes from Dr. Stellar indicate that [Plaintiff] is doing well (Exhibit 21/14).

(A.R. 394-95.)

Plaintiff contends that the ALJ improperly rejected Dr. Stellar's opinion by failing to set forth clear and convincing reasons based on substantial evidence. (Joint Stip. at 5, 8.) Defendant correctly maintains that the 2001 Order was based on the ALJ's failure to fully develop the record by not requesting records from Dr. Stellar pertaining to the period that was at issue. Defendant further contends that "[t]here is no showing that anything else material to [P]laintiff's claim existed was not obtained." (Joint Stip. at 9.) Neither party now contends that Dr. Stellar's records were either illegible or unreadable. Indeed, in the Joint Stipulation, Plaintiff states that "[t]he record is complete." (Joint Stip. at 8.) Thus, the issue presented by the parties is whether the ALJ's rejection of Dr. Stellar's opinion was proper based on the record as it stands.

A physician's opinion that a claimant is "unable to work" may invade on the province of the ALJ to determine a claimant's ultimate disability. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)("We are

responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .   A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also* <u>Batson v. Commissioner</u>, 359 F.3d 1190, 1194-95 (9th Cir. 2004).  Thus, the ALJ was not required to accept Dr. Stellar's December 1994 opinion that Plaintiff was "unable to work."

Furthermore, the reasons provided by ALJ for rejecting the limitations set forth in Dr. Stellar's April 22, 1996 report are specific and legitimate, and clear and convincing.   The ALJ cited objective evidence, including x-rays from 1996 and 1998, which failed to support the extreme limitations found by Dr. Stellar in his April 22, 1996 report.[2]  (A.R. 395.)  Specifically, a January 16, 1996 x-ray showed "[e]vidence of interval cardiac bypass surgery but otherwise the chest is unchanged since 18 February 1994 *with no evidence of acute cardiac or pulmonary disease*."  (A.R. 371; emphasis added; *see also* A.R. 368 -- March 27, 1998 chest x-ray showing "[s]tatus post coronary bypass surgery and mild compression deformity [of] several lower thoracic vertebra; chest study otherwise appears within normal limits" and "no significant interval change compared to examination dated 1/16/96.")  Although Plaintiff contends that the ALJ improperly summarized an April 25, 1994 treadmill stress test, during which Plaintiff's ECG was "abnormal" (*see* A.R. 185-86) and which was terminated due to "fatigue" (A.R. 184), the ALJ correctly found that Dr. Stellar noted on this ECG

---

[2]    Plaintiff's contention that the ALJ failed to address objective evidence during the claimed period of disability is incorrect. (Joint Stip. at 6.)

report that it revealed "no evidence of ischemia" and a "normal blood pressure response" and that Plaintiff appeared to have a normal resting heart rate (*i.e.*, sitting, 60 beats per minute, standing, 65 beats per minute).  (A.R. 184.)

In addition, the ALJ noted that Dr. Stellar treated Plaintiff on a quarterly basis, which is not indicative of debilitating cardiac symptoms.  *See* <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1433 (9th Cir. 1995)(the claimant's conservative treatment for his back injury constituted a clear and convincing reason for disregarding testimony that the claimant was disabled).  The ALJ further cited Dr. Stellar's opinion that Plaintiff had a "good prognosis," which is at odds with his opinions regarding Plaintiff's extreme limitations.[3]  (A.R. 395); *see also* (A.R. 236 -- Dr. Stellar's February 2, 1996 Comprehensive Cardiology Evaluation noting that Plaintiff's condition was "stable" and that he should return in three months; A.R. 240 -- Dr. Stellar's August 18, 1995 progress notes stating that Plaintiff was "doing well"; A.R. 352 -- Dr. Stellar's April 6, 1998 Cardiology Evaluation noting that "since surgery, [Plaintiff] has been doing well.")

In discussing other evidence in the record which supported a

---

[3]     In addition, Dr. Stellar makes no note of any limitation pertaining to exposure to stress, which was one of Plaintiff's primary contentions at the administrative hearings as to why he no longer could perform his past work as a manager.  (*See* A.R. 35 -- Plaintiff's testimony at the Mary 10, 1996 hearing that he was prevented from working due to "the stress of the job"; A.R. 38 -- Plaintiff's testimony that "I don't have the patience anymore to cope with the traffic"; A.R. 40-42 -- Plaintiff's testimony that he could no longer cope with the competitive nature of his former work which required dealing with "a lot of stress"; A.R. 270 -- Plaintiff's testimony at the June 1, 1999 hearing that he found the driving and decision-making required in his former job to be "very stressful.")

rejection of Dr. Stellar's opinions, the ALJ cited the opinion of Dr. Kummer, a cardiologist who examined Plaintiff at the request of the Commissioner on May 21, 1998.  Dr. Kummer diagnosed Plaintiff with:  1) atherosclerotic heart disease with coronary artery bypass surgery in 1994; 2) atherosclerotic risk factors of hypercholesterolemia and controlled hypertension; 3) multiple basal cell carcinomas with extensive excisions over the nose; 4) prior history of degenerative knee disease with arthoroscopic repair of the right and left knees, in 1991 and 1992; and 5) prostrate cancer requiring forthcoming resection. (A.R. 350.)  Dr. Kummer further noted that:

> Since [the time of Plaintiff's bypass surgery in 1994, he] has been very active and works out in a health spa and this specifically including walking 3.2 miles on a 5% grade, for 20 to 30 minutes three times a week, riding an exercise bike, and doing weight lifting.  He has no limitations during these activities and has had no angina, dyspnea, dizziness, fatigue, shortness of breath, or syncope since the bypass surgery. [Plaintiff] also has no symptoms of orthopnea or paroxysmal nocturnal dyspnea.

(A.R. 350.)

Dr. Kummer administered an ECG stress test, which (aside from sinus bradycardia), was "normal," and he noted that Plaintiff:  "demonstrated excellent work capacity walking 9 minutes and 45 seconds, at which time he was limited by fatigue"; and exhibited "rare atrial ectopic complexes but had no inducible ischemia."  Dr. Kummer further noted that Plaintiff

12

had a normal cardiac exam with no murmurs or gallops, and concluded that Plaintiff "*has no manifestations of coronary artery disease with his current medications*." (A.R. 351; emphasis added.)  While Dr. Kummer's opinion is based on an examination conducted five months following the expiration of Plaintiff's claimed period of disability, it clearly has probative value of what limitations Plaintiff had due to his cardiac problems during the claimed period of disability, especially since it is based, in part, on Plaintiff's own report of his physical activities following his surgery.  *See*, *e.g.*, Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996)(medical evaluations made after the expiration of a claimant's insured status is relevant to an evaluation of the onset date of pre-expiration condition); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant).

In addition, Dr. Beardmore, the medical expert who testified at the May 10, 1996 hearing and reviewed the record, opined that Plaintiff could perform "light" work despite his cardiac symptoms.[4]  (A.R. 57.)  *See, e.g.,* Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other

---

[4]      Dr. Beardmore stated that he "was unable to read the personal physician's records, so they are not helpful." (A.R. 57.)  As noted above, the Court's concern reflected in the 2001 Order was that Plaintiff should have the opportunity to have the record further developed in view of possibility that Dr. Beardmore was unable to read any crucial portions of Dr. Stellar's notes in order to render an opinion regarding Plaintiff's limitations. However, the parties are now in agreement that all necessary portions of the record are legible and complete, and Dr. Beardmore did not note any further information that he needed to review in order to render an opinion.  The Court therefore finds that Dr. Beardmore's opinion is based on substantial evidence.

13

evidence in the records and are consistent with it"); Andrews, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). The ALJ incorporated additional functional non-exertional limitations as found in the prior 1996 and 1999 hearing decisions into Plaintiff's residual functional capacity finding. (A.R. 396.) Thus, the ALJ's residual functional capacity finding was based on substantial evidence, and his finding, based on the testimony of Ms. Randi Hetrick, the vocational expert, that Plaintiff could perform his former work as a telecommunications inspector and manager, was based on substantial evidence.[5]

Accordingly, the ALJ's rejection of Dr. Stellar's opinions were based on specific and legitimate, and clear and convincing, reasons. Therefore, the finding that Plaintiff was not disabled is affirmed.

### CONCLUSION

For all of the foregoing reasons, the Court finds that the

---

[5] The vocational expert testified at the May 10, 1996 and June 1, 1999 hearings. At the May 10, 1996 hearing, she testified that Plaintiff's past relevant work, as it is normally performed in the national economy, was a combination of jobs that are classified by the Dictionary of Occupational Titles as both "sedentary" and "light" work. (A.R. 59.) She affirmed her testimony at the June 1, 1999 hearing (A.R. 288-89) and confirmed that an individual with Plaintiff's residual functional capacity could perform his past relevant work as a manager and telecommunications inspector as such jobs are generally performed in the national economy (A.R. 295-98).

Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence, and that neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2006

_____/s/_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

15